UNITED STATES DISTRICT COURT　　　　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
　　　　　　　　　　　　　　　　　　　　　　:
EMERSON AYALA,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff,　　　　　　　　　　　　　:　　　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　　:　　　AND ORDER
　　　-against-　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　　11-CV-233 (JG) (ALC)
METRO ONE SECURITY SYSTEMS, INC　　　:
INC. and METRO ONE LOSS PREVENTION　:
SERVICES GROUP (GUARD DIVISION　　　:
NY), INC.,　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　　　　　　　　:
----------------------------------------------------------x

A P P E A R A N C E S

GINARTE, O'DWYER, GONZALEZ, GALLARDO & WINOGRAD, LLP
　　　　　400 Market Street
　　　　　Newark, NJ 10044
　　　By:　Adam J. Kleinfeldt
　　　　　*Attorney for Plaintiff*

　　　ERIC M. NELSON
　　　　　112 Madison Avenue, Sixth Floor
　　　　　New York, New York 10016
　　　　　*Attorney for Defendants*

JOHN GLEESON, United States District Judge:

　　　　　Emerson Ayala brings this action against Metro One Security Systems, Inc. ("Security Systems") and Metro One Loss Prevention Services Group (Guard Division NY), Inc. ("Loss Prevention"), alleging acts of racial discrimination in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code § 8-502 ("NYCHRL"). Defendants move to dismiss all of Ayala's claims against Loss Prevention and his Title VII claim against Security Systems

pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1]  For the reasons stated below the motion to dismiss is denied.

BACKGROUND[2]

A.  *Factual Background*

1.  *Ayala's Employment and the Allegedly Discriminatory Actions*

From March 2008 to March 2009, Ayala was employed by Security Systems as an access control system technician ("technician").[3]  Ayala's job required him to visit commercial properties to install or fix security equipment.  In June 2008, after Ayala had been employed at Security Systems for approximately one month, the company hired Jim Smolinski for a supervisory position.  At that time, Ayala was one of two Hispanic technicians.  After Smolinski was hired, Security Systems began to engage in various acts of discrimination against its non-Caucasian employees, including Ayala.  In particular, when the company's Caucasian technicians were provided with Blackberry smartphones and Home Depot credit cards, Ayala and the other Hispanic technician were not.  Caucasian technicians were sent to job sites in wealthy neighborhoods, while Ayala was sent to poor urban neighborhoods.  When Security Systems acquired two new cars, both were given to Caucasian technicians, although Ayala was the second-most senior technician at the company.  Ayala further alleges that Caucasian employees

---

[1]  Ayala's claims against Security Systems for violation of his civil rights under 42 U.S.C. § 1981 and the New York State and New York City Human Rights Laws have not been challenged and remain pending.  In this Memorandum and Order, reference to claims against the defendants should not be understood to include those claims.

[2]  The facts set forth here are drawn from the amended complaint.  As I must, I assume them to be true for purposes of the motion.  *See infra*, Part B.1.

[3]  In his amended complaint, Ayala alleges that he was employed by both Security Systems and Loss Prevention.  However, at oral argument on April 13, 2011, counsel for Ayala confirmed that Ayala was formally employed only by Security Systems.  The allegation that Ayala was "employed" by Loss Prevention was intended not as a statement of fact, but as an asserted legal conclusion that Loss Prevention should be treated as Ayala's employer for the purposes of this action although it never nominally employed him.

2

were paid higher wages than their non-Caucasian colleagues, and that Security Systems engaged in discriminatory hiring practices. In support of the latter allegation, Ayala states that during the period of his employment, two non-Caucasian technicians were fired and three Caucasians were hired.

Ayala alleges that his own termination was motivated by racial discrimination. On March 26, 2009, the day he was laid off, Ayala was given conflicting reasons for his termination. At first, he was presented with an Employee Disciplinary Review Form signed by Smolinski indicating that he was being laid off due to "new company standards." Shortly thereafter, he was presented with a second Employee Disciplinary Review Form, which stated that he was being terminated for insubordination, tardiness, misconduct, violation of policy or procedure, and unsatisfactory performance. Ayala had never been warned for tardiness, unsatisfactory performance, or violation of policy or procedure. A Caucasian was hired to replace Ayala.

2. *The Relationship Between Security Systems and Loss Prevention*

Security Systems and Loss Prevention are nominally separate companies, but the same person is chief executive officer of both companies, and their principal executive offices are located in the same office suite in Staten Island. The controlling shares of each company's stock are owned by the same individuals, and the companies' finances are commonly controlled. Security Systems and Loss Prevention also have centralized control of labor relations. Personnel decisions are made in common by the two companies, at least to the extent that Security Systems' management represented to Ayala that it had the authority to offer him employment with Loss Prevention.

B. *Procedural Background*

On an unspecified date after his termination, Ayala filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") charging that Security Systems had discriminated against him in the workplace and terminated him because of his race.[4] On November 10, 2010, Ayala obtained a right to sue letter from the EEOC. He commenced the present action on January 14, 2011, naming Security Systems and an entity called Metro One Loss Prevention Group as defendants. On February 22, 2011, Ayala filed an amended complaint that, *inter alia*, replaced Metro One Loss Prevention Group with Metro One Loss Prevention Services Group (Guard Division NY), Inc. On March 14, 2011, the defendants named in the amended complaint filed their motion to dismiss. Loss Prevention argues that it is not subject to liability because it never employed Ayala or had any contractual relationship with him, and because it was not named in Ayala's EEOC charge. Security Systems argues that it is not subject to Title VII because it never had fifteen or more employees.[5] Oral argument on the motion to dismiss was heard on April 13, 2011.

DISCUSSION

A.   *Defendants' Motion to Dismiss Under Rule 12(b)(1)*

The defendants move to dismiss Ayala's claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Section 1331 of Title 28 of the U.S. Code gives this Court jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." Accordingly, Ayala's claims under Title VII and 42 U.S.C. § 1981 are within this court's jurisdiction. In light of Ayala's federal claims, this court also has subject matter jurisdiction over his New York State and New York City Human Rights Law claims pursuant to 28 U.S.C. §

---

[4] The amended complaint does not specify which company or companies were named in the EEOC complaint. However, at oral argument on the motion to dismiss, both parties agreed that Security Systems was named in the EEOC charge and Loss Prevention was not.

[5] The defendants do not argue that Ayala's allegations are insufficient to create a reasonable inference that Security Systems engaged in actionable discriminatory conduct.

4

1367(a), which allows federal district courts to exercise supplemental jurisdiction over state law claims that are closely related to federal law claims raised in the same action.

The defendants make no argument to support their assertion that the Court lacks subject matter jurisdiction over Ayala's claims. Instead, the defendants' arguments all go to the sufficiency of the complaint and are properly raised in a motion to dismiss under Rule 12(b)(6) for failure to state a claim. Specifically, the defendants maintain that they are not employers within the definitions set forth in Title VII and the case law construing 42 U.S.C. § 1981, and that Ayala has not exhausted his administrative remedies with respect to Loss Prevention. These are challenges to the merits of the federal claims alleged in the amended complaint. When presented with such arguments cloaked as challenges to the exercise of subject matter jurisdiction, district courts in this circuit have been directed to "ask only whether–on its face–the complaint is drawn so as to seek recovery under federal law or the Constitution" and, if so, to "assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir. 1996).

More specifically, the Supreme Court has held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006); *see also Da Silva v. Kinsho Intern. Corp.*, 229 F.3d 358 (2d Cir. 2000). It has also been established in this circuit that failure to exhaust one's administrative remedies with the EEOC does not create a jurisdictional bar to suit in federal court under Title VII. *Francis v. City of New York*, 235 F.3d 763, 768 (noting that although the Second Circuit has repeatedly "referred, in passing, to Title VII's exhaustion requirements as a matter of 'jurisdiction' . . . when our decisions have turned on the question of whether proper administrative exhaustion is a jurisdictional prerequisite rather than a

5

waivable condition precedent to brining suit, we have consistently chosen the latter approach"); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 396 (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," and relying, in part, on precedents in which the Court had entertained Title VII claims of individuals who had filed no claims with the EEOC (citing *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976); *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975))); *Boos v. Runyon*, 201 F.3d 178 (2d Cir. 2000) (plaintiff's failure to seek EEO counseling prior to bringing suit under the Rehabilitation Act constituted failure to exhaust administrative remedies but did not create jurisdictional bar to suit despite "language in some of our cases suggesting that the failure to exhaust EEOC administrative requirements before filing suit does act as a jurisdictional bar"). Accordingly, the defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

B.  *The Defendants' Motion to Dismiss Under Rule 12(b)(6)*

  1.  *The Rule 12(b)(6) Legal Standard*

To survive a motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible only if the pleaded facts permit a court to reasonably infer that the plaintiff is entitled to relief. *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level," and the stated grounds for relief must consist of more than "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When deciding a Rule 12(b)(6) motion to dismiss, a court must limit its consideration to the allegations "contained within the four corners of the complaint." *Goldberg v. Danaher*, 599 F.3d 181, 183084 (2d Cir. 2010). The court also must accept all factual allegations in the complaint as true and draw all reasonable inferences in

the non-movant's favor. *See Shomo v. City of New York*, 570 F.3d 176, 183 (2d Cir. 2009).

Accordingly, I decline the defendants' invitation to consider materials outside of the complaint or to require proof of Ayala's allegations at this stage of the proceedings.[6]

    2.    *Loss Prevention's Liability Absent a Direct Relationship with Ayala*

        a.    *The Legal Standard for Finding a Single Integrated Enterprise*

Under Title VII and the New York State and City Human Rights Laws, it is unlawful for an "employer" to discriminate against an employee on the basis of race. 42 U.S.C. § 2000e-2(a); N.Y. Exec. Law § 296(a); N.Y. City Admin. Code § 8-107(a). Generally, an entity that is merely affiliated with a plaintiff's employer is not liable for the employer's racially discriminatory acts. Similarly, to state a claim under 42 U.S.C. § 1981, a plaintiff must show that he suffered discrimination that "interfered with a contractual relationship." *Krulik v. Board of Educ. of City of New York*, 781 F.2d 15, 23 (2d Cir. 1986) (citing *Runyon v. McCrary*, 427 U.S. 160, 170-171 (1976)). Where no contract–and no prospect of a contract–exists between a plaintiff and defendant, § 1981 liability will typically not attach. Accordingly, Loss Prevention argues that because it never employed Ayala, and because it never had a contractual relationship with him, it cannot be held liable for Security Systems' alleged acts of discrimination.

---

    [6]    All parties have submitted affidavits and other evidentiary materials along with their motion papers. The defendants insist that the Court may consider these materials because they have moved to dismiss under Rule 12(b)(1), and a court deciding a motion to dismiss for lack of subject matter jurisdiction may look outside the complaint. As discussed above, the defendants' motion was improperly styled as a Rule 12(b)(1) motion. Defendants' arguments address the sufficiency of the pleadings, and hence their motion is properly made under Rule 12(b)(6). A party may not present affidavits on a purported Rule 12(b)(1) motion and thereby convert what is actually a Rule 12(b)(6) motion into one for summary judgment under Rule 56. *Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.8 (2d Cir. 2006). When materials outside the pleadings are presented on a Rule 12(b)(6) motion, a court may either disregard such materials or treat the motion to dismiss as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Whether to convert a 12(b)(6) motion into one for summary judgment is within the court's discretion, *Gryga v. Ganzman*, 991 F.Supp. 105, 107 (E.D.N.Y. 1998), but the court may exercise that discretion only if all parties have been given "a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). As Ayala observes, the parties have not yet had the benefit of discovery and cannot yet present all materials relevant to the questions raised by defendants' motion to dismiss. Accordingly, I treat the motion as a motion to dismiss for failure to state a claim and disregard the affidavits and other materials filed by both parties in connection with their motion papers.

However, in certain "extraordinary" circumstances, a corporate entity may be held liable for the discriminatory acts of "a separate, related entity." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir.1996). "To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the other." *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 341 (2d Cir. 2000); *see also Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005) ("There is well-established authority under this theory that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.").

Whether an integrated enterprise exists depends on a four-part inquiry that evaluates nominally separate companies by reference to: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inv.*, 69 F.3d 1235, 1240 (2d Cir. 1995). In determining whether multiple entities constitute a "single employer" for the purposes of Title VII liability, courts in this circuit focus primarily on the second factor: whether the entities share centralized control of labor relations. *Id.* However, no one factor is determinative, and all four are not required. *Murray*, 74 F.3d at 404. A defendant that is related to an entity that formally employs the plaintiff need not have "total control or ultimate control over hiring decisions" to face liability, but the plaintiff must show that "there is an amount of participation that is sufficient and necessary to the total employment process." *Cook*, 69 F.3d at 1241 (internal quotation marks and alterations omitted).

8

The single employer doctrine was initially developed to determine whether two entities constitute a single employer in the context of labor disputes, but it has since been adopted in the Title VII context. *Cook*, 69 F.3d at 1240. The doctrine also applies to determine liability under § 1981, the NYSHRL and the NYCHRL absent an employer-employee or contractual relationship. *See Barbosa v. Continuum Health Partners, Inc.*, 176 F.Supp.2d 210, 216 (S.D.N.Y. 2010) (the single employer doctrine applies "under Section 1981 and the local New York anti-discrimination statutes"); *Fowler v. Scores Holding Co., Inc.*, 677 F.Supp.2d 673, 681 (S.D.N.Y. 2009) (applying the doctrine where NYSHRL and NYCHRL claims were asserted (citing *Arculeo*, 425 F.3d at 197-98); *Snyder v. Advest, Inc.*, No. 06 Civ. 1426, 2008 WL 4571502, at *6 (S.D.N.Y. June 8, 2008) (applying the doctrine where § 1981 were asserted).

      b.      *Application to Loss Prevention and Security Systems*

In order for Ayala's claims against Loss Prevention to survive a 12(b)(6) motion to dismiss, his complaint must contain sufficient "factual content" for the Court to infer that he can plausibly make out the elements of the single employer doctrine. *See Iqbal*, 129 S.Ct. at 1949. While the Court must accept as true all facts that Ayala has pled, it need not do the same for "legal conclusions couched as a factual allegation." *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 555). Although Ayala alleges only a few facts relevant to the single employer question, they are sufficient to create a plausible inference that Loss Prevention had some control over the terms of Ayala's employment with Security Systems.[7] First, Ayala alleges that Loss Prevention and

---

[7] Accordingly, I need not consider the allegations that straddle the line between statements of fact and conclusions of law. The amended complaint contains a number of these allegations. For example,, Ayala asserts that the defendant companies share "common control of operating and management practices," "centralized control of labor relations," and "common financial control." While in ordinary speech, these phrases are clearly statements of fact, in this context they have direct legal consequences as elements of the four-part inquiry governing the single employer doctrine. Furthermore, Ayala does not support them with more precise factual allegations. For instance, he does not allege that Loss Prevention and Security Systems share bank accounts, employees, or records. *See Herman v. Blockbuster Entertainment Group*, 18 F.Supp. 2d 304, 309 (S.D.N.Y. 1998) (listing such factors as relevant to the interrelation of operations inquiry (citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir.

9

Security Systems share a single chief executive officer and common office space, and that the controlling shares of the companies' stock are commonly owned. The Second Circuit has specifically noted the relevance of such facts. *See Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996) (per curiam) (factors for determining single integrated enterprise liability include "use of common office facilities and equipment and family connections between or among the various enterprises"); *N.L.R.B. v. 675 West End Owners Corp.*, 304 Fed. App'x 911, 913 (2d Cir. 2008) ("The common usage of office facilities and family relationships between persons involved in the purportedly discrete companies is also relevant."). More significantly, Ayala alleges that Security Systems offered to transfer him to a position with Loss Prevention, from which he infers that the two companies share control over their hiring practices. Defendants dispute the truth of this allegation, but at this stage in the proceedings, the facts must be accepted as Ayala has presented them. This fact creates an inference that the defendants, "two nominally independent entities[,] do not act under an arm's length relationship," and that principles of fairness would therefore not be violated by "imposing liability for labor infractions" on both entities. *Murray*, 74 F.3d at 405.

Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact. *Lihli Fashions Corp.*, 80 F.3d at 747. Accordingly, the question is generally not suited to resolution on a motion to dismiss. *Dias v. Community Action Project, Inc.*, 2009 WL 595601, at *5 (E.D.N.Y. March 6, 2009) ("[U]ltimate failure to prove single employer status is not a ground for dismissing for failure to state a claim." (quoting *Da*

---

1997); *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981-82 (4th Cir. 1987))), *aff'd*, No. 98-9301, 1999 WL 385765 (2d Cir. June 4, 1999). However, because the allegations in the amended complaint that are clearly factual (*i.e.*, not legal conclusions) are sufficient to defeat defendants' motion to dismiss, I am able decide the present motion without regard to the other allegations quoted above and need not determine whether the phrases quoted above and others like them are statements of fact that must be accepted as true or conclusions of law. Accordingly, I disregard them for present purposes.

*Silva*, 229 F.3d at 365 (alterations omitted))); *Fowler*, 677 F.Supp.2d at 681. Dismissal is particularly inappropriate where, as here, the plaintiff has pled sufficient facts to state a facially plausible basis for relief and provided the defendants with fair notice of his theory of liability. *See Barbosa*, 176 F.Supp.2d at 219 (denying motion to dismiss where "joint-employer" theory of liability was plausibly alleged). Ayala is entitled to discovery of any facts within the defendants' possession that may reveal the defendants to be a single integrated enterprise. *Id.* Accordingly, Loss Prevention's motion to dismiss is denied insofar as it relies on the absence of a formal employment relationship or other contract with Ayala.

       3.      *Loss Prevention's Exposure to Title VII Liability Absent an EEOC Charge*

Ordinarily, "[a] complainant must file a charge against a party with the EEOC or an authorized state agency before the complainant can sue that party in federal court under Title VII." *Vital v. Interfaith Medical Center*, 168 F.3d 615, 619 (2d Cir. 1999) (citing 42 U.S.C. § 2000e-5(f)(1)). It is undisputed that Ayala filed a charge with the EEOC concerning Security Systems' allegedly discriminatory actions, but Loss Prevention was not named in that charge. *See supra* n.4. Loss Prevention argues that it therefore may not be sued in federal court for alleged violations of Title VII. However, in *Johnson v. Palma*, the Second Circuit recognized an exception to the rule that a Title VII defendant must have been named in an EEOC complaint. 931 F.2d 203, 209 (2d Cir. 1991); *see also Vital*, 168 F.3d at 619. Pursuant to what *Johnson* termed the "identity of interest" exception, "a Title VII action [may] proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson*, 931 F.2d at 209. Four factors govern the application of this exception:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of

> the EEOC complaint; 2) whether, under the circumstances, the
> interests of a named party are so similar as the unnamed party's that
> for the purpose of obtaining voluntary conciliation and compliance
> it would be unnecessary to include the unnamed party in the EEOC
> proceedings; 3) whether its absence from the EEOC proceedings
> resulted in actual prejudice to the interests of the unnamed party;
> 4) whether the unnamed party has in some way represented to the
> complainant that its relationship with the complainant is to be
> through the named party.

*Id.* at 209-10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)) (brackets omitted). District courts applying this test have not done so mechanically and have treated no single factor as determinative. *See Schade v. Coty, Inc.*, No. 00 CIV 1569 JGK, 2001 WL 709258, at *4 (S.D.N.Y. June 25, 2001). Aplying this test to the facts alleged here, I conclude that sufficient identity of interests exists between Loss Prevention and Security Systems for Ayala's Title VII claim to survive a motion to dismiss despite his failure to name Loss Prevention in his EEOC charge.

The purpose of an EEOC charge is "to notify the charged party of the alleged violation and also [to] bring[] the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates." *Vital*, 168 F.3d at 619 (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 891, 905 (7th Cir. 1981), *cert denied*, 455 U.S. 1017 (1982)). This purpose will not be undermined by allowing the Title VII claim to proceed against Loss Prevention in this case, because it can be plausibly inferred from the amended complaint that Loss Prevention received notification of the EEOC charge and was not deprived of any opportunity to voluntarily comply with a mandate of the EEOC.

Ayala has alleged that Loss Prevention and Security Systems share a chief executive officer and common office space and that they share control of Security Systems' labor

relations. These facts give rise to a plausible inference that the charge against Security Systems served also to notify Loss Prevention of Ayala's complaints and the possibility of litigation. In addition, because the companies allegedly share a single majority shareholder and a common labor policy, a plausible inference can be drawn that their interests would have aligned in the EEOC proceedings had Loss Prevention been formally involved.[8] *See Schade*, 2001 WL 709258, at *5; *Brodie v. New York City Transit Auth.*, No. 96 CIV. 6813 (LLM), 1998 WL 599710, at *6 (S.D.N.Y. Sept. 10, 1998) ("[A] similarity of interest has been found only in cases where the named and unnamed parties are aligned in some way such that efforts at conciliation with one would render similar efforts with the other unnecessary, as might be the case, for example, with regard to a parent company and its subsidiary." (citing *Cook*, 69 F.3d at 1241-42)). *Cf. Johnson*, 931 F.2d at 210 (finding no identity of interests where there was no "basis for inferring that [the unnamed party] was represented by [the named party] in connection with the grievance process").

If Ayala's allegations are accepted as true, Loss Prevention's interests were represented in the administrative proceedings by Security Systems, and it therefore suffered no prejudice as a result of its formal exclusion. Furthermore, as the defendants' counsel acknowledged at the April 13, 2011 oral argument, the EEOC conducted no investigation and made no attempts at conciliation. Accordingly, Loss Prevention was not deprived of an opportunity to resolve Ayala's complaints at the agency level. *See Schade*, 2001 WL 709258, at *5 ("In general, where the EEOC makes no investigatory or conciliatory efforts, courts will find that an unnamed party has not suffered any prejudice.").

---

[8] The general alignment of the defendants' interests is also evidenced by the fact that they are jointly represented in these proceedings.

Arguably, since Ayala relies heavily on a representation made to him that Security Systems and Loss Prevention had control over one another's hiring practices and personnel policies, he might have discerned Loss Prevention's alleged role in the discriminatory conduct set forth in his EEOC charge. The first factor in the four-part test adopted in *Johnson* thus appears to weigh against waiving the administrative exhaustion requirement with respect to Loss Prevention. However, the representation made to Ayala concerning Security Systems' authority to offer him a position with Loss Prevention might also have suggested to him that his relationship with Loss Prevention was to be through Security Systems, in which case the fourth factor of the *Johnson* test weighs in his favor. In any event, because the amended complaint suggests an identity of interests between Loss Prevention and Security Systems and a lack of actual prejudice to Loss Prevention as a result of Ayala's failure to name it in his EEOC charge, the motion to dismiss the Title VII claim as against Loss Prevention is denied.

4. *Security Systems' Title VII Liability as an Employer of Fewer Than Fifteen Individuals*

Title VII, which creates a cause of action against employers that engage in racially discriminatory acts, defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b). The amended complaint does not allege that Security Systems has ever employed fifteen or more individuals, and Security Systems contends that it has not. Thus, Security Systems argues it does not meet the statutory definition of "employer" and cannot be held liable under Title VII. However, as acknowledged at oral argument by counsel for defendants, Security Systems and Loss Prevention together have more than the requisite fifteen employees. Where a plaintiff establishes that the single employer doctrine applies, the employees of the nominally separate entities comprising a

14

single integrated enterprise may be aggregated to satisfy the fifteen-employee requirement for Title VII claims. *Laurin v. Pokoik*, No. 02 Civ. 1938 (LMM), 2004 WL 513999, at *4 (S.D.N.Y. March 15, 2004) (citing *Smith v. K & F Indus., Inc.*, 190 F.Supp.2d 643, 647 (SDNY 2002)). As discussed above, Ayala has alleged sufficient facts to suggest that Loss Prevention and Security Systems constitute a single integrated enterprise. Accordingly, for the purposes of this motion, they are treated as a single entity with the employees of each attributed to the other.

The Second Circuit "has as yet taken no position on whether aggregation is appropriate in . . . the single employer . . . context for purposes of determining whether the Title VII threshold is met." *Arculeo*, 425 F.3d at 199-200. However, the court acknowledged in *Arculeo* that "[d]istrict court opinions in this Circuit *have* allowed aggregation[.]" *Id.* at 198 (emphasis in original) (citing *Westphal v. Catch Ball Products Corp.*, 953 F.Supp. 475, 478 (S.D.N.Y. 1997); *Fernot v. Crafts Inn, Inc.*, 895 F.Supp. 668, 685 (D.Vt. 1995). In *Arculeo*, the single employer doctrine did not apply, and so the court explicitly declined to evaluate the district court decisions permitting aggregation of employees in the single employer context. Nonetheless, the court highlighted the logic of aggregation in such circumstances, where "the court draws the conclusion that, although nominally and technically distinct, several entities are properly seen as a single integrated entity. Accordingly *all* the employees of the constituent entities are employees of the overarching integrated entity, and all of those employees may be aggregated to determine whether it employs fifteen employees." *Id.* at 199 (emphasis in original).

I agree with that logic and conclude that where Ayala has alleged facts creating an inference that Security Systems and Loss Prevention constitute a single integrated enterprise, it is appropriate to consider their employees in the aggregate when deciding a Rule 12(b)(6) motion.

Accordingly, I deny Security Systems' motion to dismiss Ayala's Title VII claim on the basis that it has fewer than fifteen employees.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is denied in its entirety.[9]

So ordered.

John Gleeson, U.S.D.J.

Dated: April 19, 2011
Brooklyn, New York

---

[9] In the event that its motion was denied, Loss Prevention moved the Court to order an initial phase of discovery limited to the issues addressed in this memorandum order concerning the relationship between the defendants. I decline to limit discovery but do so without prejudice to the parties presenting the same arguments to Judge Carter.